IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: AUTOMOTIVE REFINISHING PAINT ANTITRUST LITIGATION | :<br>:<br>:  MDL DOCKET NO. 1426<br>:<br>: |

**MEMORANDUM & ORDER**

**SURRICK, J.**                                                                                                    **DECEMBER 28, 2007**

      Presently before the Court is Plaintiffs' Motion for Final Approval of Proposed Settlements with PPG Industries, Inc., the Sherwin-Williams Company and Sherwin-Williams Automotive Finishes Corporation, and for Final Approval of Plaintiffs' Proposed Plan for Distribution of Settlement Funds (Doc. No. 219). For the reasons that follow, Plaintiffs' Motion will be granted.

**I.   BACKGROUND**

      In this antitrust class action, the Class consists of all individuals and entities who purchased automotive refinishing paint in the United States directly from Defendants, their predecessors or their controlled subsidiaries from at least as early as January 1, 1993 to at least December 31, 2000 (the "Class Period").[1] (Consolidated Am. Compl. ¶ 28.) Defendants, who are all manufacturers of automotive refinishing paint, are E.I. DuPont de Nemours and Company, and DuPont Performance Coatings, Inc., ("DuPont Defendants"); BASF

---

[1] For the purposes of this Memorandum, the Class Representatives are referred to as Plaintiffs, and the "Class" refers to "[a]ll individuals or entities (excluding governmental entities, Defendants, their parents, predecessors, subsidiaries, affiliates, and their co-conspirators) who purchased automotive refinishing paint in the United States directly from any of the Defendants or any predecessor, subsidiary or affiliate thereof at any time during the period from January 1, 1993 to December 31, 2000."

Aktiengesellschaft, BASF Coatings AG, and BASF Corp., ("BASF Defendants"); PPG Industries, Inc., ("PPG"); Sherwin-Williams Co., and Sherwin-Williams Automotive Finishes Corporation ("Sherwin-Williams Defendants"); and Akzo Nobel Car Refinishes, and Akzo Nobel Coatings, Inc. ("Akzo Defendants").  (*See id.* ¶¶ 15-24.)  Plaintiffs allege that during the Class Period, Defendants conspired to fix, raise, maintain or stabilize prices for automotive refinishing paint sold in the United States, thereby artificially inflating prices for automotive refinishing paint in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.  The Consolidated and Amended Class Action Complaint (Doc. No. 13) seeks treble damages, injunctive relief, and attorneys' fees pursuant to Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15, 26.

      We granted final approval of a partial settlement with the Akzo Defendants on September 5, 2003.  (Doc. No. 108.)  As a result of that settlement, Akzo paid $18,750,000, creating a settlement fund for the benefit of the Class.  (*Id.*)  On September 27, 2004, we granted final approval of a partial settlement with the DuPont Defendants and the BASF Defendants.  (Doc. No. 135.)  As a result of that settlement, BASF paid $12,000,000 to the Class and DuPont paid $36,000,000.  On December 20, 2006, Class Counsel filed Plaintiffs' Motion for Preliminary Approval of Proposed Settlements with Defendants PPG Industries, Inc., the Sherwin-Williams Company and Sherwin-Williams Automotive Finishes Corporation.  (Doc. No. 213.)  We granted Preliminary Approval on December 28, 2006.  (Doc. No. 215.)  On January 15, 2007, Class Counsel filed Plaintiffs' Motion for Authorization to Disseminate Notice of Proposed Settlements with Defendants PPG Industries, Inc., the Sherwin-Williams Company and Sherwin-Williams Automotive Finishes Corporation (Doc. No. 217), which we granted on January 31, 2007 (Doc. No. 218).

In the interim, we also granted Plaintiffs' Motion to Withhold Payment to Certain Claimants Pending Further Qualification Of Disputed Claims (Doc. No. 189) by Order dated December 28, 2006 (Doc. No. 216). After Class Counsel reviewed the disputed claims and submitted supplemental memoranda, on June 26, 2007 we authorized Class Counsel to distribute from the settlement fund to the 41 claimants whose claims were recommended for full payment. (Doc. No. 224.) On August 2, 2007, we authorized Class Counsel to distribute from the settlement fund to an additional 29 claimants based on their adjusted allowed purchases, their respective *pro rata* shares of the amount of the prior distribution that was withheld pursuant to the Court's December 28, 2006 Order (Doc. No. 216), plus accrued interest. (Doc. No. 239.) We barred 103 claims with disallowed purchases (consisting of the disallowed portions of the 29 claimants and 74 claims that were disallowed in their entirety) from participation in the Settlement Fund. (*Id.*)

If approved, these settlements will conclude the litigation. Pursuant to this agreement, PPG will pay $23,000,000 to the Class and Sherwin Williams will pay $16,000,000. The PPG and Sherwin-Williams settlements together with the settlements with the other Defendants brings the total amount of the settlement achieved to $105.75 million. As mentioned above, by Memoranda and Orders dated December 28, 2006 and January 31, 2007, we granted preliminary approval of the proposed settlements, directed that notice of the proposed settlements be disseminated to the Class, and ordered a formal fairness hearing to be held on August 9, 2007. (Doc. Nos. 215, 218.) In addition, the Class members were notified that all claims and/or objections to the settlements must be filed before June 29, 2007.

Objections to the proposed settlements were filed by Gary's Auto Parts, Inc., Gators

Paint & Body Shop, Inc., Givens Autobody Shop, Inc., McKay Corporation, and Miller Equipment Company.  (Doc. Nos. 226, 228, 229, 233.)  Prior to the fairness hearing, Gators, Givens, and Miller withdrew their objections (Doc. Nos. 231, 233) and Gary's Auto Parts and McKay Corporation withdrew their objections after reaching an agreement with the Plaintiffs' class.  (Doc. Nos. 242, 243.)  There are no remaining objections to the proposed settlements.

**I.     LEGAL STANDARD**

"A class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs."  Fed. R. Civ. P. 23(e).  To approve a class action settlement, a court must determine that the settlement is "fair, adequate, and reasonable."  *Eichenholtz v. Brennan*, 52 F.3d 478, 482 (3d Cir. 1995).  A court makes this determination after holding a formal fairness hearing at which the proponents of the settlement "should explain why the proposed settlement is preferable . . . to continuation of the litigation."  Manual for Complex Litigation (Fourth) § 13.14 (2004).  Moreover, the proponents of the proposed settlement bear the burden of establishing that it is fair, adequate, and reasonable.  *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995).

In determining whether a settlement is fair, adequate, and reasonable, district courts must consider nine factors articulated by the Court of Appeals for the Third Circuit in *Girsh v. Jepson*, 521 F.2d 153 (3rd Cir. 1975).  The *Girsh* factors are:

>   (1)   the complexity, expense and likely duration of the litigation;
>   (2)   the reaction of the class to the settlement;
>   (3)   the stage of the proceedings and the amount of discovery completed;
>   (4)   the risks of establishing liability;

> (5) the risks of establishing damages;
> (6) the risks of maintaining the class action through the trial;
> (7) the ability of the defendants to withstand a greater judgment;
> (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and
> (9) the range of reasonableness of the settlement fund in light of all the attendant risks of litigation.

*In re Cendant Corp. Litig.*, 264 F.3d 201, 232 (3d Cir. 2001) (citing *Girsh*, 521 F.2d at 157).

Giving substantial weight to the recommendations of experienced attorneys, who have engaged in arms-length settlement negotiations, is appropriate, although the ultimate determination of the fairness of a partial settlement is left to the court. *See, e.g., Petruzzi's, Inc. v. Darling-Delaware Co., Inc.*, 880 F. Supp. 292, 301 (M.D. Pa. 1995) (finding that "[t]he opinions and recommendation of such experienced counsel are indeed entitled to considerable weight"); *Lake v. First Nationwide Bank*, 156 F.R.D. 615, 628 (E.D.Pa. 1994) (giving "due regard to the recommendations of the experienced counsel in this case, who have negotiated this settlement at arms-length and in good faith" in assessing whether a settlement was fair, adequate, and reasonable); *see also* 4 Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 11:47 (4th ed. 2002). The court should also ensure that the proposed settlement is not the product of collusion or fraud. *See Neuberger v. Shapiro*, 110 F. Supp. 2d 373, 380 (E.D.Pa. 2000) (noting that no suggestion of collusion between the settling defendant and plaintiff's counsel existed in approving a partial class action settlement). Moreover, where a proposed settlement affects the rights of third parties, "it is not enough to evaluate the fairness of the settlement to the settling parties; the interests of such third parties must be considered." *Eichenholtz*, 52 F.3d at 482.

**II.   DISCUSSION**

A.  The *Girsh* Fairness Factors

1.  *The complexity, expense and likely duration of the litigation.*

The first *Girsh* factor "captures 'the probable costs, in both time and money, of continued litigation.'" *In re Cendant Corp. Litig.*, 264 F.3d at 233 (quoting *In re Gen. Motors Corp.*, 55 F.3d at 812).  In conducting this analysis, a court needs to consider the type of case before it.  For example, courts have found that "antitrust class action is arguably the most complex action to prosecute.  The legal and factual issues involved are always numerous and uncertain in outcome." *In re Linerboard Antitrust Litig.*, 296 F. Supp. 2d 568, 577 (E.D.Pa. 2003) (quoting *In re Motorsports Merchandise Antitrust Litig.*, 112 F. Supp. 2d 1329, 1337 (N.D. Ga. 2000)) (internal citations and quotation marks omitted); *see also In re Shopping Carts Antitrust Litig.*, MDL No. 451, 1983 WL 1950, at *7 (S.D.N.Y. Nov. 18, 1983) (noting that "antitrust price fixing actions are generally complex, expensive and lengthy").

If this case were to continue to trial, the remaining discovery would be complex and expensive.  Moreover, the outcome of trial would be uncertain.  This litigation began in June 2001 and was consolidated before this Court by the Judicial Panel on Multidistrict Litigation.  For purposes of the instant settlement agreements, more than sixty-thousand copies of the Notice of Proposed Settlements with PPG and Sherwin-Williams were mailed to potential class members.  (Doc. No. 219 at 4-5; Hr'g Tr. 6, Aug. 9, 2007.)  Defendants, whose sales comprise "over 90% of the United States market for automotive refinishing paint," (Consolidated Am. Compl. ¶ 39), are alleged to have engaged in a widespread conspiracy to fix prices in the United States.  These allegations, as well as the participation of multiple actors on both sides, suggest that this case would require significant time and resources, as well as substantial skill, to pursue

through trial.

The parties in these proceedings have raised and briefed complex issues of first impression, including the determination of personal jurisdiction under the Clayton Act, as well as governing authority for jurisdictional discovery. (*See* Doc. Nos. 23, 40.) In addition, both the durational and geographic scope of Plaintiffs' discovery requests have been the subject of multiple disputes between the parties. Were litigation to proceed in this case, we expect that vigorously litigated disputes, consuming considerable resources, would continue between the skilled attorneys' on both sides of this case. Plaintiffs' counsel have indicated that since May 31, 2004, they have expended 48,251.85 hours on the litigation with PPG and Sherwin-Williams and have incurred expenses in the amount of $1,204,720.63. (Doc. No. 220, Exs. A, B.) Therefore, considerations of complexity, expense and the duration of this litigation support the court's approval of these settlement agreements.

    2.  *The reaction of the class to the settlement.*

The second *Girsh* factor "attempts to gauge whether members of the class support the settlement." *See In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283, 318 (3d Cir. 1998). As mentioned above, the members of this Class in this case had sufficient opportunity to object to the proposed settlements. Pursuant to the January 31, 2007 Order of this Court, over 60,000 notices were mailed to the direct purchasers of automotive refinishing paint identified by the Defendants in this Class Action. In addition, a summary notice regarding the proposed settlements was published in the national edition of *The Wall Street Journal* February 26, 2007 and in the April 2007 edition of the automotive refinishing trade publication *Hammer & Dolly*. (Doc. No. 219 at 5.) Members of the Class were required to postmark any objections

to the terms of the proposed settlements by June 29, 2007.  This deadline gave prospective objectors approximately four months after notice was disseminated to file their objections.

In response to these notices, there were only five objections.  Three of these objections were withdrawn and the remaining two were settled.  The two objectors who settled their claims did not object in substance to the Proposed Settlements but merely wanted to share in the proceeds.  (Doc. Nos. 242, 243.)  The fact that an overwhelming majority of the Class did not file objections is a significant element to consider in determining the overall fairness of the settlements.  *See In re Cendant Corp. Litig.*, 264 F.3d at 235 ("The vast disparity between the number of potential class members who received notice of the Settlement and the number of objectors creates a strong presumption that this factor weighs in favor of the Settlement.").  The fact that there are no current objectors to the settlements and that the two objections that arose were raised by companies who wanted to share in the settlements and did not in any way object to their terms suggests that the reaction of the Class to the settlements is positive and weighs in favor of approval of these partial settlements.

        3.     *The stage of the proceedings and the amount of discovery completed.*

The third *Girsh* factor "'captures the degree of case development that class counsel have accomplished prior to settlement.  Through this lens, courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating.'"  *In re Cendant Corp. Litig.*, 264 F.3d at 235 (quoting *In re General Motors Corp.*, 55 F.3d at 813).  Generally, post-discovery settlements are viewed as more likely to reflect the true value of a claim as discovery allows both sides to gain an appreciation of the potential liability and the likelihood of success.  *See Bell Atlantic Corp. v. Bolger*, 2 F.3d 1304, 1314 (3d Cir. 1993).  In this case, fact discovery

was substantially complete.  Class counsel took over sixty depositions and reviewed millions of pages of documents.  Plaintiffs' experts were working on their expert reports which were due on December 18, 2006, only two weeks after the PPG settlement was executed and shortly after Plaintiffs and Sherwin-Williams had agreed to the terms of settlement.  As a result, the discovery conducted has certainly provided the parties with sufficient information to make an informed judgment concerning these settlements.  Thus, we find that this factor supports approval of the settlements.

        4.    *The risks of establishing liability and damages.*

The fourth and fifth *Girsh* factors "attempt[] to measure the expected value of litigating the action rather than settling it at the current time."  *In re Cendant Corp. Litig.*, 264 F.3d at 238 (quoting *In re General Motors Corp.*, 55 F.3d at 816).  This is a class action antitrust case which has inherent risks merely by virtue of the subject matter and because Defendants are represented by experienced and highly skilled defense counsel.  If the case were to proceed to trial, Plaintiffs would face a number of challenges in order to succeed before a jury.  Plaintiffs would be required to prove that PPG and Sherwin-Williams actually engaged in the alleged collusion, that they and their co-conspirators fraudulently concealed the conspiracy, and that Plaintiffs suffered the damages alleged.  In addition, had the case proceeded to trial, competing experts on the issue of damages would certainly have added to the risks.  *See In re Chambers Dev. Sec. Litig.*, 912 F. Supp. 822, 838 (W.D. Pa. 1995) (with regard to the risk created in part by the battle of experts, court concludes that "[a] very large bird in the hand in this litigation is surely worth more than whatever birds are lurking in the bushes.").  Furthermore, litigation is always inherently unpredictable.  "[N]o no matter how confident one may be of the outcome of litigation, such

confidence is often misplaced." *State of W. Va. v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 744 (S.D.N.Y. 1970). Finally, even after a success at the trial court level, plaintiffs may face years of litigation in the appellate courts. *See In re Michael Milken and Assocs. Sec. Litig.*, 150 F.R.D. 57, 65 (S.D.N.Y. 1993) ("It must also be recognized that victory even at the trial stage is not a guarantee of ultimate success."). The risks in this particular case were amplified by the fact that the government ended its investigation into price fixing in the automotive paint industry and issued no indictments before the settlements with PPG and Sherwin-Williams were reached. As a result, this factor also weighs strongly in favor of a finding that the settlements are adequate.

       5.      *The risks of maintaining the class action through the trial.*

In the Third Circuit, examination of the sixth *Girsh* factor is perfunctory "[b]ecause the district court always possesses the authority to decertify or modify a class that proves unmanageable . . . There will always be a 'risk' or possibility of decertification, and consequently the court can always claim this factor weighs in favor of settlement." *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent*, 148 F.3d 283, 321 (3d Cir. 1998). Consistent with this reality, we are satisfied that the inherent difficulties in bringing a class action to trial weighs in favor of approving the settlements.

       6.      *The ability of the defendants to withstand a greater judgment.*

Under the seventh *Girsh* factor, we must consider whether PPG and Sherwin-Williams could respectively withstand a judgment for an amount significantly greater than the $23,000,000 and $16,000,000, respectively, provided for in the settlement agreements. This factor "is concerned with whether the defendants could withstand a judgment for an amount significantly greater than the Settlement." *In re Cendant Corp. Litig.*, 264 F.3d at 240.

However, "[t]his factor does not require that the defendant pay the maximum it is able to pay." *In re Diet Drugs Prods. Liab. Litig.*, Nos. 1203, 99-20593, 2000 WL 1222042, at *62 (E.D.Pa. Aug. 28, 2000) (citing *In re Prudential*, 148 F.3d at 321-22).

Plaintiffs state that "[t]he settlements with PPG and Sherwin-Williams represent approximately 1.5% of sales for the four years during the class period when PPG and Sherwin-Williams each realized their greatest sales of Automotive Refinishing Paint products in the United States." (Doc. No. 219 at 17.) PPG and Sherwin-Williams are both large multinational corporations. In 2006, PPG had sales of $11 billion[2] and Sherwin-Williams had sales of $7.8 billion.[3]

While we have no doubt that these Defendants could withstand greater judgments, a $39,000,000 settlement is substantial. We are satisfied that this settlement figure is fair, reasonable and adequate, despite Defendants' ability to pay a greater sum. It is also fair and reasonable considering settlements with other Defendants and considering the total settlement figure of $105.75 million. Therefore, this factor weighs in favor of granting the settlement agreements.

> 7. *The reasonableness of the settlement in light of the best possible recovery and in light of all of the attendant risks of litigation.*

Under the final two *Girsh* factors, the court must analyze the settlement in light of the best and worst case scenarios. "This inquiry measures the value of the settlement itself to

---

[2] This and other financial information about PPG can be found at http://www.sec.gov/Archives/edgar/data/79879/000119312507036001/d10k.htm#tx74817_8.

[3] This and other financial information about Sherwin-Williams can be found at http://www2.sherwin-williams.com/InvestorRelations/Annual_Reports/2006_Annual_Report.pdf

determine whether the decision to settle represents a good value for a relatively weak case or a sell-out of an otherwise strong case." *In re Chambers Dev. Sec. Litig.*, 912 F. Supp. at 839.

These settlements provide for a cash payment equal to 1.5% of Sherwin-Williams and PPG's sales of automotive refinishing paint for the four years during the Class Period in which it had its highest sales totals. This percentage falls within a range of reasonableness when viewed in the context of other percentages in antitrust class action settlements in this circuit. *See e.g., Meijer, Inc. v. 3M*, Civ. A. No. 04-5871, 2006 U.S. Dist. LEXIS 56744, at *53 (E.D.Pa. Aug. 15, 2006) (approving settlement fund equal to approximately 2% of defendant 3M's sales to the settlement class); *In re Linerboard Antitrust Litig.*, 321 F. Supp. 2d 619, 627 (E.D.Pa. Apr. 21, 2004) (approving settlement equal to 1.62% of the settling defendants sales); *In re Plastic Tableware Antitrust Litig.*, Civ. A. No. 94-3564, 1995 WL 723175, at *1 (E.D.Pa. Dec. 4, 1995) (approving settlement equal to 3.5% of sales); *Fisher Bros., Inc. v. Mueller Brass Co.*, 630 F.Supp. 493, 499 (E.D.Pa. 1985) (approving settlement equal to 0.2% of relevant sales).

Moreover, we have noted that the Department of Justice terminated its investigation without issuing any indictments against these Defendants. (Doc. No. 125 at 9 (citing Doc. No. 90).) The decision by the Department of Justice demonstrates that were the parties to proceed with litigation, establishing liability would not be a foregone conclusion. *See In re Corrugated Container Antitrust Litig.*, MDL No. 310, 1983 WL 1872, at *22 (S.D. Tex. Sept. 1, 1983). The settlement agreements appear particularly reasonable considering the risks of litigation and considering the Government's reluctance to prosecute. This factor weighs in favor of granting the motion for final approval of the settlement agreements.

    **B.**    **Other Considerations**

Finally, as we noted in our Memorandum and Order of September 27, 2005, we observe that these partial settlements are the product of arms-length negotiations between very experienced attorneys. A proposed resolution resulting from such a process is entitled to great weight. *Spring Garden United Neighbors, Inc. v. City of Phila.*, Civ. A. No. 83-3209, 1986 WL 1525, at *3 (E.D.Pa. Feb. 4, 1986) (citing *Jamison v. Butcher & Sherrerd*, 68 F.R.D. 479, 481 (E.D.Pa. 1975)). In addition, as stated *supra*, there is no evidence that the settlement agreements are the product of collusion or fraud, or that they are not in the best interests of the class.

### III.   PROPOSED PLAN FOR ALLOCATION

"Approval of a plan of allocation of a settlement fund in a class action is governed by the same standards of review applicable to approval of the settlement as a whole: the distribution plan must be fair, reasonable, and adequate." *In re Lucent Techs., Inc., Sec. Litig.*, 307 F. Supp. 2d 633, 649 (D.N.J. 2004) (citing *In re Computron Software, Inc.,* 6 F. Supp. 2d 313, 321 (D.N.J. 1998)). "In general, a plan of allocation that reimburses class members based on the type and extent of their injuries is reasonable." *In re Gen. Instrument Sec. Litig.*, 209 F. Supp. 2d 423, 432 (E.D.Pa. 2001) (citing *Ikon*, 194 F.R.D. at 184).

Plaintiffs seek to allocate and distribute the settlement fund to Class members who file timely and valid claim forms. The PPG and Sherwin-Williams settlement proceeds will be distributed to Class members who previously submitted Claim Forms that were approved by the Court. (Doc. No. 219 at 22.) The proceeds will be distributed *pro rata* to all Court-approved Claimants based upon the amount of their "Allowed Purchases" of Automotive Refinishing Paint approved by the Court. (*Id.*) As a result, any Class member who previously submitted a Claim Form that was approved by the Court need not take any further action to share in the proceeds of

the settlements.  (*Id.*)

The February 16, 2007 Notice to potential Class members, which was authorized by the Court's January 31, 2007 Order (Doc. No. 218), required Class members to file any objections to the settlements or to the distribution plan by June 29, 2007.  There are no objections to the distribution plan.  The Court has already concluded that the Notice provided to Class members in 2004 fully complied with all aspects of Federal Rule of Civil Procedure 23 and with due process. *In re Automotive Refinishing Paint Antitrust Litig.*, MDL Docket No. 1426, 2004 U.S. Dist. LEXIS 29161, at *30 (E.D.Pa. Sept. 27, 2004).  The May 24, 2004 Notice and Claim Form clearly informed Class members that submission of a valid and timely Claim Form was a prerequisite to participation in any recovery and required the submission of such Claim Forms by August 9, 2004.  (*See* Doc. No. 219 at 22 (citing Ex. C (Claim Form)).)  Thereafter, on August 7, 2006, we approved all valid claims including those submitted on or before September 26, 2005, which included 225 claims that were submitted after the August 9, 2004 deadline.  (Doc. No. 185.)  Accordingly, under the circumstances, we are compelled to conclude that the distribution plan proposed by Class Counsel is fair, adequate, and reasonable.

## IV.   CONCLUSION

After reviewing the settlement agreements with PPG and Sherwin-Williams in light of the nine *Girsh* factors, we are satisfied that the settlements are fair, reasonable, and adequate. Accordingly, we will grant Plaintiffs' Motion for Final Approval of Proposed Settlements with PPG Industries, Inc., the Sherwin-Williams Company and Sherwin-Williams Automotive Finishes Corporation, and for Final Approval of Plaintiffs' Proposed Plan for Distribution of Settlement Funds (Doc. No. 219).

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: AUTOMOTIVE REFINISHING PAINT ANTITRUST LITIGATION | : <br> : <br> : MDL DOCKET NO. 1426 <br> : <br> : |

### ORDER

AND NOW, this 28th day of December, 2007, upon consideration of Plaintiffs' Motion for Final Approval of Proposed Settlements with PPG Industries, Inc., the Sherwin-Williams Company and Sherwin-Williams Automotive Finishes Corporation, and for Final Approval of Plaintiffs' Proposed Plan for Distribution of Settlement Funds (Doc. No. 219), after a duly-noticed final approval hearing, and the Court expressly finding, pursuant to Federal Rule of Civil Procedure 54(b), that there is no just reason for delay, it is ORDERED that the Court expressly directs the entry of the following Final Judgment as to PPG and Sherwin-Williams:

1.  The Court finds that due and adequate notice of the settlements with PPG and Sherwin-Williams was provided, pursuant to Rule 23 of the Federal Rules of Civil Procedure, to all members of the Class certified by Order of the Court dated October 9, 2002.  The notice provided was the best notice practicable under the circumstances and included individual notice by first class mail to all members of the Class who could be identified through reasonable effort and notice published in the national edition of the *Wall Street Journal* and in the Automotive Refinishing Paint trade publication *Hammer & Dolly*.  The Court finds and concludes that the notice provided fully complied in all respects with the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process.  Moreover, the Court's prior notice dated March 17, 2003 allowing Class members to opt out met all of the requirements of Rule 23 and due process

and the Court finds and concludes that it is not necessary to provide Class members with an additional opportunity to opt out of the Class pursuant to Rule 23(e).

    2.       The Court finds that the Class members identified on the schedule filed with the Court in accordance with the Court's Class Notice dated March 17, 2003, and no others, have timely requested to be excluded from the Class and accordingly are not included in or bound by the Final Judgment being entered pursuant to this Order.

    3.       The Court finds that the Agreements of Settlement between Plaintiffs and the Class and PPG and between Plaintiffs and the Class and Sherwin-Williams are fair, reasonable, and adequate.  The Agreements of Settlement are approved pursuant to Rule 23(e).

    4.       All claims of Plaintiffs and the Class which were asserted against PPG and Sherwin-Williams in the Consolidated and Amended Class Action Complaint, as well as in the individual actions included in MDL Docket No. 1426, are dismissed with prejudice, as provided for in the Agreements of Settlement.

    5.       Plaintiffs and any and all members of the Class who have not previously timely excluded themselves pursuant to the Notice of the Court dated March 17, 2003 are permanently barred and enjoined from prosecuting against PPG and Sherwin-Williams, and all of their present and former parents, affiliates, subsidiaries, predecessors and successors, and their respective present and former officers, directors, employees, partners, limited partners, heirs, executors, administrators and assigns, all manner of claims, demands, actions, suits, causes of action, whether class, individual or otherwise, for damages of any nature whenever incurred, liabilities of any nature whatsoever, including without limitation any claims for costs, expenses, penalties, or attorneys' fees, known or unknown, suspected or unsuspected, in law or in equity, that Releasors, or each of them, whether directly, derivatively, or in any other capacity, ever had,

now have, or hereafter can, shall, or may have, relating in any way to any conduct prior to the dates of the Agreements of Settlement arising under or relating to any federal, state or common law, or the law of any nation or domestic or foreign governmental entity, which relate to or arise out of any alleged unlawful conspiracy to fix, raise, maintain, or stabilize the prices of Automotive Refinishing Paint sold in the United States, or any other allegedly collusive, conspiratorial, or aiding and abetting practice between or among manufacturers with respect to the sale of Automotive Refinishing Paint sold in the United States, including, but not limited to any conduct alleged or that could have been alleged in the Actions.  Nothing in this Order shall: (i) limit the right of any Class member that has not previously excluded itself from the Class in accordance with the Court's Class Action Notice dated March 17, 2003 to submit a claim and participate in the settlements; (ii) affect the rights of any person to participate in or benefit from any relief or other recovery as part of a settlement or judgment on behalf of any indirect purchaser(s) of Automotive Refinishing Paint; or (iii) constitute a release of any claim arising from a purchase of Automotive Refinishing Paint outside the United States.

6. Each member of the Class (other than those persons who have previously excluded themselves from the Class in accordance with the Court's Class Action Notice dated March 17, 2003) has expressly agreed to waive and release, any and all provisions, rights and benefits conferred by § 1542 of the California Civil Code, which reads:

> Section 1542.  <u>Certain Claims Not Affected by General Release.</u>  A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor . . .

or by any law of any state or territory in the United States, which is similar to § 1542.  Each member of the Class may hereafter discover facts other than or different from those which he, she, or it knows or believes to be true with respect to the claims which are the subject matter of

the provisions of paragraph five of this Order, but each of those Class members has expressly waived any claim which is the subject matter of paragraph five.

    7.    Except as provided in the Agreements of Settlement, PPG and Sherwin-Williams shall have no obligations for attorneys' fees, incentive awards to Plaintiffs, costs or expenses, including but not limited to expenses of administering and distributing the Settlement Fund.

    8.    Nothing in this Final Judgment Order of the Agreements of Settlement and no aspect of the settlements or negotiation thereof is or shall be deemed or construed to be an admission or concession of any violation of any statute or law or of any liability or wrongdoing by PPG and/or Sherwin-Williams (or their respective subsidiaries, affiliates, directors, officers or employees) or of the truth of any claims or allegations in any of the complaints in the Actions or any other pleading, and evidence thereof shall not be discoverable or used, directly or indirectly, in any way, whether in any of the Actions or in any other action or proceeding other than to enforce the terms of this Order or the Agreements of Settlement.

    9.    This Court retains jurisdiction for the purposes of implementing and enforcing the Agreements of Settlement.

    IT IS SO ORDERED.

                              BY THE COURT:

                              _____
                              R. Barclay Surrick, Judge