IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE: AUTOMOTIVE REFINISHING  :
PAINT ANTITRUST LITIGATION     :
                               :   MDL DOCKET NO. 1426
                               :
                               :

**MEMORANDUM & ORDER**

**SURRICK, J.**                                                **JANUARY 3, 2008**

  Presently before the Court is Class Counsel's Joint Petition for Award of Counsel Fees, Payment of Costs and Expenses, and Award of Incentive Payments to the Class Representatives.[1] (Doc. No. 220.)  In October of 2004, we awarded petitioners interim attorneys' fees in the amount of $21,538,000, approximately 32% of the $66,750,000 Settlement Fund created by settlements with three of the five Defendants in this class action.  Petitioners are now requesting attorneys' fees of one-third of the $39,000,000 Settlement Fund added by settlements with the remaining two Defendants, PPG and Sherwin-Williams.  Petitioners also request reimbursement of costs totaling $1,204,720.63 for litigation expenses incurred in the prosecution of this case since May 31, 2004, approval of incentive awards of $15,000 for each of the four Class Representatives, and authority for Co-Lead Counsel to determine the specific allocations of

---

[1] In this Memorandum, "Petitioners" refers to Co-Lead Counsel for the Class, "Class Counsel" refers to all attorneys who have participated in the representation of the Class, and the "Class" refers to "[a]ll individuals or entities (excluding governmental entities, Defendants, their parents, predecessors, subsidiaries, affiliates, and their co-conspirators) who purchased automotive refinishing paint in the United States directly from any of the Defendants or any predecessor, subsidiary or affiliate thereof at any time during the period of January 1, 1993 to December 31, 2000."

attorneys' fees to the attorneys who have assisted in representation of the Class.  On August 9, 2007, a hearing was held on the Fee Petition.  (*See* Hr'g Tr., Aug. 9, 2007).  Co-Lead Counsel argued in support of the Petition.  There were no objections.  For the reasons that follow, the Joint Petition will be granted.

I.     BACKGROUND

The factual background of this case is described at length in our Memorandum denying Defendants' Motions to Dismiss, *In re Auto. Refinishing Paint Antitrust Litig.*, MDL No. 1426, 2002 U.S. Dist. LEXIS 15099, at *2-13 (E.D.Pa. July 31, 2002), and in the Third Circuit's opinion *In re Auto. Refinishing Paint Antitrust Litig.*, 358 F.3d 288, 290-92 (3d Cir. 2004).  We set forth here the factual and procedural history pertinent to the Fee Petition.

This antitrust action involved allegations that a number of manufacturers of automotive refinishing paint engaged in a conspiracy to fix prices in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.  Plaintiffs sought damages and injunctive relief under Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15, 26.  The Defendant manufacturers are PPG Industries, Inc.; E.I. DuPont de Nemours and Company, and DuPont Performance Coatings, Inc. ("DuPont"); Sherwin-Williams, Co., and Sherwin-Williams Automotive Finishes Corporation ("Sherwin-Williams"); Akzo Nobel Car Refinishers B.V., and Akzo Nobel Coatings, Inc. ("Akzo"); and BASF Aktiengesellschaft, BASF Coatings AG, and BASF Corporation ("BASF").  Sixty-three lawsuits filed in five different states were transferred to the Eastern District of Pennsylvania by the Judicial Panel on Multidistrict Litigation on November 19, 2001.  (Doc. No. 1.)  An Initial Conference was held on January 8, 2001.  (Doc. No. 11.)  At the conclusion of that conference, and by an Order dated January 10, 2004, the law firms of Barrack, Rodos & Bacine; Bernard M. Gross, P.C.; and Kohn, Swift & Graft, P.C. were appointed as Co-Lead Counsel.  (Doc. No. 12.)

An Executive Committee composed of the law firms of Berger & Montague P.C.; Fine, Kaplan & Black; Kaplan Fox & Kilsheimer LLP; and Milberg Weiss Bershad Hynes & Lerach LLP was also appointed.  (*Id.*)  On February 11, 2002, Plaintiffs filed a Consolidated and Amended Class Action Complaint.  (Doc. No. 13.)  All Defendants filed motions to dismiss.  (Doc. Nos. 21, 22, 23).  These motions were denied.  (Doc. Nos. 38, 66.)  On April 12, 2002, a Motion by Plaintiffs for Class Certification was filed.  (Doc. No. 26.)  Thereafter, four of the five Defendants entered into a Stipulation with Co-Lead Counsel agreeing to certification of a national class consisting of all direct purchasers of automotive refinishing paint from Defendants in the United States.  (Doc. No. 74.)  The Stipulation also provided that Defendants would give Plaintiffs copies of all documents that had been submitted by Defendants to the United States Attorney for the Eastern District of Pennsylvania in the grand jury investigation then being conducted and that formal discovery would be stayed pending grand jury action.  (Doc. No. 68.)  Defendant BASF did not join in the stipulations.  Rather, BASF requested that we certify to the Third Circuit Court of Appeals our Orders of July 31, 2002, denying their Motion to Dismiss for Lack of Personal Jurisdiction and denying their Motion for Protective Order related to jurisdictional discovery.  (Doc. No. 71.)  On October 9, 2002, we certified the issues raised in those Motions to the Third Circuit.  (Doc. No. 75.)

On February 26, 2003, Plaintiffs filed a Motion seeking preliminary approval of a partial settlement that had been negotiated with Akzo.  (Doc. Nos. 81, 82.)  Preliminary approval was granted after hearing.  (Doc. No. 84.)  By Memorandum and Order dated September 5, 2003, we granted final approval of the patrial settlement with Akzo in the amount of $18,750,000.  (Doc. Nos. 108, 109.)  This settlement was reached prior to the announcement by the Department of Justice in March 2003 that it was terminating its grand jury investigation, and that no

3

indictments would be filed against any of these Defendants in connection with the alleged conspiracy. (Doc. No. 90.)

After the grand jury had completed its work, discovery continued. In April 2004, counsel advised that they had successfully negotiated a partial settlement with Defendants BASF and DuPont. (Doc. No. 119.) On May 10, 2004, these settlements were preliminarily approved after hearing. (Doc. No. 122.) By Order dated September 27, 2004, we granted final approval of the settlement between the Class and BASF in the amount of $12,000,000, and the settlement between the Class and DuPont in the amount of $36,000,000. (Doc. No. 135.) As a result of those partial settlements, a Settlement Fund of $66,750,000 was created.

On June 30, 2004, at the same time that the Plaintiff Class filed the motion seeking final approval of the settlements with BASF and DuPont, Petitioners submitted a Joint Petition for the award of interim attorneys' fees. (Doc. No. 125.) Petitioners also requested reimbursement of costs totaling $711,94.60, the creation of a fund to pay future expenses, approval of incentive awards of $15,000 for each of the four Class Representatives, and authority for Co-Lead Counsel to determine the specific allocations of attorneys' fees. By Memorandum and Order dated October 13, 2004, we granted the Joint Petition. (Doc. No. 136.) An amount of $1,000,000 was set aside for expenses incurred in the continuing prosecution of the litigation, as well as expenses related to the administration of the Settlement Fund. (*Id*.)

Class Counsel have since negotiated settlements with the remaining two Defendants, PPG and Sherwin-Williams. The settlements, $23,000,000 and $16,000,000, respectively, were preliminarily approved by the Court on December 28, 2006, *In re Auto. Refinishing Paint Antitrust Litig.*, MDL No. 1426, 2006 U.S. Dist. LEXIS 93936, at *7 (E.D.Pa. Dec. 28, 2006),

and notice to the Class was authorized by Order dated January 31, 2007.  (*See* Doc. No. 218.)
The notice approved by the Court advised the Class that Class Counsel intended to petition for an award of attorneys' fees in an amount no greater than one-third of the Settlement Fund, reimbursement of litigation expenses, and payment of incentive awards.  Co-Lead Counsel advise that over 60,000 notices were provided to potential Class Members via mail and publication in the Wall Street Journal and in an industry trade publication.  (Hr'g Tr. at 6-7.)
The deadline for filing objections was June 29, 2007.  (Doc. No. 220 at 9 n.6.)  There were no objections to final approval of the settlement. While two objections had been filed concerning the distribution plan of the Settlement Fund, they have since been withdrawn.  (Hr'g Tr. at 13.)
Petitioners submitted declarations from Class Counsel detailing the work that had been done and expenses incurred in the litigation of this case along with the instant Petition for the award of counsel fees.  (Doc. No. 220).  A fairness hearing was held on August 9, 2007 where arguments for approval of the proposed settlement and award of counsel fees were heard.  (Hr'g Tr. Aug. 9, 2007).  By Memorandum and Order dated December 28, 2007, final approval of the settlements with PPG and Sherwin-Williams was granted.

## II.     PETITION FOR COUNSEL FEES

Petitioners request counsel fees of $13,000,000, representing one-third of the $39,000,000 added to the Settlement Fund by the settlements with PPG and Sherwin-Williams, and reimbursement of out-of-pocket expenses in the amount of $1,204,720.63.  (Doc. No. 220.)
We must determine whether Petitioners' request for this amount is fair and reasonable.  *In re Corel Corp, Inc. Sec. Litig.*, 293 F. Supp. 2d 484, 495 (E.D.Pa. 2003) (citing *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)).  We addressed this same issue when we awarded attorneys'

fees in relation to the settlements made with the other Defendants in this case. *See In re Auto. Refinishing Paint Antitrust Litig.*, MDL No. 1426, 2004 U.S. Dist. LEXIS 29162, at *7 (E.D.Pa. Oct. 13, 2004).

There are two primary methods for calculating attorneys' fees: the percentage of recovery method and the lodestar method. The percentage of recovery method awards counsel a percent of the amount recovered for the class. *In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 732 n.10 (3d Cir. 2001). The lodestar method provides counsel with an amount equal to the number of hours spent working on the case multiplied by "a reasonable hourly billing rate for such services given the geographical area, the nature of the services provided, and the experience of the lawyer." *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000).

In this Circuit, the percentage of recovery method is "generally favored" in cases involving a common settlement fund because it allows "courts to award fees from the fund 'in a manner that rewards counsel for success and penalizes it for failure.'" *In re Cendant Corp.*, 243 F.3d at 732 (quoting *In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 148 F.3d 283, 333 (3d Cir. 1998)). The Third Circuit has also recommended that district courts conclude this evaluation by employing the lodestar method as a "cross-check" to ensure that the result under the percentage of recovery method is reasonable. *Id.* at 742.

  A. *Percentage of Recovery Method*

Since a common fund has been created through settlements with PPG and Sherwin-Williams, we are satisfied that the percentage of recovery method should be used to calculate the counsels' fees to be awarded. The standard for evaluating a fee award is reasonableness. *In re Corel Corp. Inc.*, 493 F. Supp. 2d at 495. To determine whether a particular percentage of

recovery is reasonable, the Third Circuit has directed district courts to consider the following seven factors:

> (1) the size of the fund created and the number of persons benefitted;
> (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel;
> (3) the skill and efficiency of the attorneys involved;
> (4) the complexity and duration of the litigation;
> (5) the risk of nonpayment;
> (6) the amount of time devoted to the case by plaintiff's counsel; and
> (7) the awards in similar cases.

*Gunter*, 223 F.3d at 195 n.1 (citing *In re Prudential*, 148 F.3d at 336-40; *see also* MOORE'S FEDERAL PRACTICE, MANUAL FOR COMPLEX LITIGATION (FOURTH) § 14.121 (2004).

Petitioners have requested a fee of 33.33% of the Settlement Fund created by the settlements with PPG and Sherwin-Williams. We will address each of the seven *Gunter* factors in determining the reasonableness of that request.

### 1.   *The Size of the Fund Created and the Number of Persons Benefitted.*

The settlements with the remaining defendants adds $39,000,000 to the Settlement Fund.[2] These new settlement figures represent approximately 1.5% of PPG's and Sherwin-Williams' combined sales of automotive refinishing paint in the United States in the four years during the Class Period in which they registered their highest sales total. (Doc. No. 213 at 8.) We have previously found that a large number of people will benefit from the Settlement Fund. *In re Auto. Refinishing Paint*, 2004 U.S. Dist. LEXIS 29162 at *11. We noted that approximately 2,000 Class members, purchasing at least 75% of the automotive refinishing paint sold in the United States, had filed claims. (*Id.*) Based upon the size of the Settlement Fund, the many

---

[2] The prior settlements approved by this Court totaled $66,750,000, bringing the final amount of the Settlement Fund to $105,750,000.

people benefitting, and the volume of commerce that they represent, the first *Gunter* factor supports granting the Fee Petition.

>   2.   *The Presence or Absence of Substantial Objections by Members of the Class to the Settlement Terms and/or the Fees Requested by Counsel*

The Notice sent to Class members advised that Petitioners would apply for a fee award of up to one-third of the added Settlement and that Class members had a right to object to the fee petition. There are no current objections to the fee request.[3] A lack of objections demonstrates that the Class views the settlement as a success and finds the request for counsel fees to be reasonable. *See In re Cell Pathways, Inc. Sec. Litig. II*, Civ. A. No. 01-1189, 2002 U.S. Dist. LEXIS 18359, at *24 (E.D.Pa. Sept. 23, 2002) (noting that one objection out of 34,277 notices shows the Class's satisfaction with the settlement and reasonableness of a 30% attorneys' fee). Therefore, this factor weighs in favor of approving the Fee Petition.

>   3.   *The Skill and Efficiency of Class Counsel*

This Court has previously recognized the outstanding efforts of both Plaintiffs' counsel and Defendants' counsel in this litigation. *In re Auto. Refinishing Paint*, 2004 U.S. Dist. LEXIS 29162 at *21 n. 3. The manner in which Petitioners conducted all aspects of this litigation, including the very successful settlement negotiations, demonstrates the significant skill and expertise of counsel. The total Settlement Fund of $105,750,000 speaks volumes with regard to Petitioners contribution to this litigation. As the Court observed in the *Linerboard Antitrust Litigation*, "[t]he result achieved is the clearest reflection of petitioners' skill and expertise." *In re Linerboard Antitrust Litig.*, MDL No. 1261, 2004 U.S. Dist. LEXIS 10532, at * 19 (E.D.Pa

---

[3] Class Counsel indicated at the hearing that two objections had initially been filed, but had subsequently been withdrawn.

June 2, 2004). Based on the successes achieved by Petitioners and the skill with which they have conducted their work, we conclude that the third *Gunter* factor also counsels in favor of granting the Fee Petition.

    4.  *The Complexity and Duration of the Litigation*

  This litigation, like most antitrust cases, has been exceedingly complex, expensive, and lengthy. *See In re Linerboard Antitrust Litig.*, 296 F. Supp. 2d 568, 577 (E.D.Pa 2003) (quoting *In re Motorsports Merchandise Antitrust Litig.*, 112 F. Supp. 2d 1329, 1337 (N.D. Ga. 2000)) ("An antitrust class action is arguably the most complex action to prosecute"); *In re Shopping Carts Antitrust Litig.*, MDL No. 451, 1983 U.S. Dist. LEXIS at *17 (S.D.N.Y. Nov. 18, 1983) (noting that "antitrust price fixing actions are generally complex, expensive, and lengthy")). Petitioners have reviewed and analyzed millions of pages of documents, and their work on this litigation has persisted over six years. The significant amount of time that Class Counsel has dedicated to this very complex case supports approval of the Fee Petition.

    5.  *The Risk of Nonpayment*

  Class Counsel undertook this case on a purely contingent basis at significant risk. *See O'Keefe v. Mercedes-Benz U.S., LLC*, 214 F.R.D. 266, 309 (E.D.Pa. 2003) ("Any contingency fee includes a risk of non-payment"); *In re Quantum Health Res., Inc.*, 962 F. Supp. 1254, 1257 (C.D. Cal. 1997) ("Because payment is contingent upon receiving a favorable result for the class, an attorney should be compensated both for services rendered and for the risk of loss or nonpayment assumed by accepting and prosecuting the case.")

  It is also important to note that Petitioners proceeded to prosecute this case even after the Department of Justice decided not to seek indictments against any of the Defendants. The risk of nonpayment is even higher when a defendants' *prima facie* liability has not been established by

the government in a criminal action. *In re Linerboard*, 2004 U.S. Dist. LEXIS 10532, at *36. Thus, the higher risk of nonpayment that Petitioners assumed in undertaking this litigation warrants approval of the Fee Petition.

      6.     *The Amount of Time Devoted to the Case by Plaintiff's Counsel*

Petitioner's exhibits demonstrate that Class Counsel have expended 48,251.85 hours on this litigation since May 31, 2004. (Doc. No. 220.) Moreover, counsel have incurred $1,204,720.63 in litigation costs and expenses since May 31, 2004. (*Id.*) As we observed with regard to the settlements with other Defendants in this litigation, this amount of time and expense demonstrates a significant commitment of resources to this litigation by counsel and weighs in favor of approving the Joint Petition.

      7.     *Awards in Similar Cases*

Petitioners seek an award that is equal to one-third of the amount added to the Settlement Fund. We have previously noted that is not unusual in antitrust class actions for the attorneys to receive awards for fees in the 30% range. *In re Auto. Refinishing Paint*, 2004 U.S. Dist. LEXIS 29162, at *29. Moreover, courts have awarded an almost identical percentage of the settlement funds as they are requesting. *See Bradburn Parent Teacher Store, Inc. v. 3M*, 513 F. Supp. 2d 322, 342 (E.D.Pa. 2007) (approving a percentage of recovery of 35%, plus reimbursement of expenses); *In re FAO Inc. Sec. Litig.*, Civ. A. No. 03-6596, 2005 U.S. Dist. LEXIS 16577, at *5-6 (E.D.Pa. May 20, 2005) (finding a fee of 33%, plus expenses, to be reasonable); *In re Corel Corp.*, 293 F. Supp. 2d 484, 497-98 (awarding counsel one-third of the settlement fund in addition to the reimbursement of litigation expenses); *In re Gen. Instrument Sec. Litig.*, 209 F. Supp. 2d 423, 433-34 (E.D.Pa. 2001) (approving a fee request of one-third of the settlement fund plus nearly $1,800,000 in expenses).

We awarded interim counsel fees in the amount of 32% of the Settlement Fund as a result of the work of counsel in obtaining settlements with the other Defendants in this litigation. *In re Auto. Refinishing Paint*, 2004 U.S. Dist. LEXIS 29162 at *40.  Although we recognized that the award was at the upper end of the range of percentage fees awarded, the facts and circumstances of the case supported the higher fee.  *Id.* at *32.   In particular, we highlighted the fact that the case involved novel legal issues that were taken to the Third Circuit.  *Id*.  Motions and discovery were contentious and voluminous.  *Id*.  Counsel devoted significant time and monetary resources, and they pursued the case at a significant risk of nonpayment.  *Id*.  Many of these same considerations apply to the settlements with the remaining two Defendants.  We cannot say that an award of 33.33% of the settlement fund created by these attorneys is unreasonable.  Therefore, we find that the seventh *Gunter* factor weighs in favor of granting the Joint Petition.

      B.      *The Lodestar Cross-Check*

While the percentage of recovery method is the appropriate method to use for calculating attorneys' fees in cases where there is a common fund, the Third Circuit has "suggested that district courts cross-check the percentage award at which they arrive against the lodestar method . . . ." *In re Cendant Corp.*, 243 F.3d at 742.  To apply the lodestar method, the court must multiply the hours worked by counsel by their hourly rates.  *In re Linerboard*, 2004 U.S. Dist. 10532, at *48-49.  In addition, the court may also multiply that number by a factor, called the lodestar multiplier, "to reflect the risks of nonpayment facing counsel, to serve as an incentive for counsel to undertake socially beneficial litigation, or as a reward to counsel for an extraordinary result." *Id.* at *49.

Plaintiff's counsel have spent 48,251.85 hours prosecuting this case since May 31, 2004. Multiplying the total of each attorney's hours by each attorney's historic hourly rate for that period generates a figure of $16,035,799.50. (Doc. No. 220, Ex. A.) When we divide counsel's requested fee of $13,000,000 by the lodestar figure, the resulting multiplier is .81. Since the multiplier is less than 1 (a "negative lodestar") and the requested fee is less than the amount that would be awarded using the lodestar method, we are satisfied that a lodestar cross-check confirms that the requested fee percent is fair and reasonable. *See In re NTL, Inc. Sec. Litig.*, Civ. A. No. 02-3013, 2007 U.S. Dist. LEXIS 13661 at *30-31 (S.D.N.Y. March 1, 2007) (noting that fee awards based on negative lodestars are fair and reasonable).

### III.  PETITION FOR REIMBURSEMENT OF COSTS AND EXPENSES

In the Joint Motion, Class Counsel also seek reimbursement of litigation costs and expenses in the amount of $1,204,720.63. (Doc. No. 125.) We have stated that "there is no reason to reject the request for reimbursement of [expenses] that counsel have spent out of their own pockets in litigating this case . . . ." *In re Auto. Refinishing Paint*, 2004 U.S. Dist. LEXIS 29162, at *35-36. Moreover, "[a]ttorneys who create a common fund for the benefit of a class are entitled to reimbursement of reasonable litigation expenses from the fund." *In re Aetna Inc. Sec. Litig.*, MDL No. 1219, 2001 U.S. Dist. LEXIS 68, at *40 (E.D.Pa. Jan. 4, 2001). The $1,204,720.63 that Petitioners request for litigation costs and expenses incurred since May 31, 2004 is in excess of the $1,000,000 set aside from prior settlements.[4] Certainly, the fact that no

---

[4] Petitioners note that as of April 29, 2007, $25,870.45 remained from the $1,000,000 set aside for litigation expenses. (Doc. No. 225.) Petitioners explain that certain expenses will continue until the conclusion of the litigation, at which time any remaining amount would be transferred to the settlement fund and distributed as part of the final distribution to the Class.

members of the Settlement Class have objected to the requested payment of expenses supports the decision to award reimbursement of Petitioner's litigation costs and expenses.

## IV.     ALLOCATION OF FEES

Class Counsel also seeks to allow Co-Lead Counsel to distribute all fees awarded to counsel who worked on this case on behalf of the Class.  All Class Counsel worked jointly under the supervision of Co-Lead Counsel and have cooperated to prosecute this litigation efficiently and effectively.  Courts generally approve joint fee applications which request a single aggregate fee award with allocations to specific firms to be determined by Co-Lead Counsel, who are most familiar with the work done by each firm and each firm's overall contribution to the litigation.  As we previously noted, Co-Lead Counsel have directed this case from its inception and are best able to assess the weight and merit of each counsel's contribution.  *In re Auto. Refinishing Paint*, 2004 U.S. Dist. LEXIS 2912, at *36 (citing *In re Linerboard*, 2004 U.S. Dist. LEXIS 10532, at *54).  In addition, allowing Counsel to allocate fees conserves the time and resources of the courts.  *In re Linerboard*, 2004 U.S. Dist. LEXIS 10532 at *54.  In retaining jurisdiction over the implementation of the Agreement, we provide adequate protection against any potential abuse. *In re Auto. Refinishing Paint*, 2004 U.S Dist. LEXIS 29162, at *36.

## V.     INCENTIVE AWARDS

Finally, Petitioners request payment of incentive awards to the four Class Representatives in the amount of $15,000.  The four Class Representatives are: Crawford's Auto Center, Inc.; 70-30 Corporation t/a Maaco Auto Painting & Body Works; Howard J. Walters d/b/a Randolph Auto Supply Co.; and David R. Bosak d/b/a Supreme Bodywerks, Inc.  Incentive awards are typically awarded to class representatives for their often extensive involvement with a lawsuit and courts in this Circuit have traditionally granted requests for these awards.  *See*

*Bradburn Parent Teacher Store, Inc.*, 2007 U.S. Dist. LEXIS 35899, at *57 ("It is particularly appropriate to compensate named representative plaintiffs with incentive awards when they have actively assisted plaintiffs' counsel in their prosecution of the litigation for the benefit of the class"); *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 145 (E.D.Pa. 2000) ("Incentive awards are 'not uncommon in class action litigation and particularly where, as here, a common fund has been created for the benefit of the entire class.'" (quoting *In re S. Ohio Corr. Facility*, 175 F.R.D. 270, 272 (S.D. Ohio 1997))).  In this case, we have recognized that "the Class representatives spent significant time assisting and educating counsel." *Automotive Refinishing Paint*, 2004 U.S. Dist. LEXIS 29162, at *40.  Petitioners assert that the four Class Representatives continued to assist Class Counsel in litigating against the remaining Defendants.  The Class Representatives not only conferred benefits on all of the Class members, but also risked jeopardizing their existing relationships with their suppliers of automotive refinishing paint products.  *See Cullen*, 197 F.R.D. at 145 ("'[C]ourts routinely approve incentive awards for the services they provide and the risks they incurred during the course of the class action litigation.'" (quoting *In re S. Ohio Corr. Facility*, 175 F.R.D at 272)).  For these reasons, we approve the award of $15,000 to each of the Class Representatives for their service to the Class.  Although Class Representatives have previously been awarded $15,000, the total award of $30,000 to each Representative is not unreasonable considering the complexity and duration of the litigation.  *See, e.g.*, *In re Remeron Direct Purchase Antitrust Litig.*, Civ. A. No. 03-0085, 2005 U.S. Dist. LEXIS 27013, at *50-51 (D.N.J. Nov. 9, 2005) ($30,000 incentive award to each named plaintiff is fair and reasonable).

## IV. CONCLUSION

Accordingly, the Joint Petition for Award of Counsel Fees, Payment of Costs and Expenses, and Award of Incentive Payments to the Class Representatives is APPROVED.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE: AUTOMOTIVE REFINISHING  :
PAINT ANTITRUST LITIGATION     :
                               :    MDL DOCKET NO. 1426
                               :
                               :

# ORDER

AND NOW, this 3rd day of January, 2008, upon consideration of Class Counsel's Joint Petition for Award of Counsel's Fees, Payment of Costs and Expenses, and Award of Incentive Payments to the Class Representatives (Doc. No. 220), and all submissions filed in support thereof, and after a fairness hearing on August 9, 2007, it is ORDERED as follows:

1. Class Counsel are awarded counsel fees in the amount of $13,000,000, with accrued interest.

2. Class Counsel are awarded reimbursement of costs and expenses in the amount of $1,204,720.63, with accrued interest.

3. Co-Lead Counsel are responsible for allocating and distributing counsel fees and expenses to be paid to Class Counsel.

4. Incentive awards in the amount of $15,000 each are awarded to the four Class Representatives, Crawford's Auto Center, Inc., 70-30 Corporation t/a Maaco Auto Painting & Body Works, Howard J. Walters d/b/a Randolph Auto Supply Co., and David R. Bosak d/b/a Supreme Bodywerks, Inc.

5. The Court retains jurisdiction over the Settlement Agreements to include resolution of any matters which may arise related to the allocation and distribution of counsel's fees and expenses to Class Counsel.

IT IS SO ORDERED.

BY THE COURT:

_____
R. Barclay Surrick, Judge